UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANN G.,[1]

                                   Plaintiff,         Case # 23-CV-00102-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.
_____

## INTRODUCTION

On January 16, 2020, Joann G. ("Plaintiff") protectively applied for supplemental security income under Title XVI of the Social Security Act (the "Act"). Tr.[2] 15. The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared at a hearing before Administrative Law Judge Brian W. Lemoine (the "ALJ") on September 2, 2021. *Id*. At the hearing, Plaintiff appeared and testified, along with her attorney and a vocational expert. *Id*. On October 26, 2016, the ALJ issued an unfavorable decision. Tr. 27. On December 8, 2022, the Appeals Council denied review. Tr. 1. Plaintiff appealed directly to this Court on January 31, 2023. ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 8. For the reasons below, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the SSA for further administrative proceedings consistent with this opinion.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify Plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

**LEGAL STANDARD**

I.  **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis added in *Brault*)).

II.  **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC")

is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 416.920(a).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2020, the application date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments through the date last insured: "obesity, obstructive sleep apnea, asthma, hypothyroid disorder, bilateral occipital neuralgia, history of prior cervical fusions; major depression and general anxiety disorder." Tr. 18; *see also* 20 C.F.R. 416.920(b). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 18.

Next, the ALJ determined that Plaintiff maintained the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), with specific exertional limitations, Tr. 19, namely that Plaintiff "needs to avoid concentrated exposure to environmental irritants such as dusts, odors, fumes, and gases; and she is limited to simple, routine, repetitive tasks with no more than occasional interaction with others." Tr. 19.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 26. At step five, the ALJ concluded that jobs existed in the national economy that Plaintiff could perform, such as

"router," "marker," and "office helper." Tr. 26. As such, the ALJ found that Plaintiff was not disabled since January 16, 2020. *Id*.

## II. Analysis

Plaintiff argues that the ALJ erred because (i) his hypothetical question to the vocational expert did not match his RFC determination, and (ii) he relied on evidence not in the record and failed to develop the record. ECF No. 6-1 at 11, 15. The Commissioner contends that (i) the ALJ's RFC determination and hypothetical question matched and, even if they did not, such error was harmless, and (ii) the ALJ adequately developed the record and no gap in the record requires remand. *See* ECF No. 8-1 at 8, 11. For the reasons below, the Court concludes that remand is required under Plaintiff's first argument. Because the Court concludes that remand is required under Plaintiff's first argument, the Court does not reach Plaintiff's second argument.

### A. Vocational Expert

Plaintiff argues that the ALJ erred by misstating Plaintiff's RFC in the hypothetical question posed to the vocational expert during Plaintiff's hearing. ECF No. 6-1 at 11. The Court agrees.

At Step Five, the ALJ must determine whether significant numbers of jobs exist in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 416.912, 416.960(c). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). An ALJ may rely on a vocational expert's testimony regarding a hypothetical if the facts of the hypothetical are based on substantial evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981); *see also Calabrese v. Astrue*, 358 F. App'x 274, 276

4

(2d Cir. 2009) (summary order). "A hypothetical 'need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments.'" *Calabrese*, 358 F. App'x at 277 (quoting *England v. Astrue*, 490 F. 3d 1017, 1023 (8th Cir. 2007)).

Here, the hypothetical the ALJ presented to the vocational expert was premised on the ALJ's RFC assessment made at Step Four, which provided that Plaintiff was "limited to simple, routine, repetitive tasks with no more than occasional interaction with others." Tr. 19. At the hearing, the ALJ posed this hypothetical to the vocational expert:

> So, my first hypothetical, let's assume a person of the same age, education, work history as the claimant. Let's further assume that person is limited to a range of light exertional work with the additional environmental limitations of needing to avoid concentrated exposure to environmental irritants such as dust, odors, fumes, and gases. And also mental limitations limiting the hypothetical person to the performance of simple, routine, repetitive tasks with *no more than occasional interaction with others including coworkers and the general public*.

Tr. 55 (emphasis added). Next, the ALJ asked the vocational expert whether there were "jobs that such a hypothetical person could perform[,]" to which the vocational expert responded in the affirmative, before providing examples such as "router," "marker," and "office helper." Tr. 55-56. Plaintiff's attorney then asked the vocational expert:

> So, with respect to that hypothetical, I would like to ask first of all if the client, or the Claimant's ability to respond appropriately to supervision was occasionally impaired. So, that is to say that the client or the Claimant could only frequently appropriately respond appropriately to supervision, would that change your analysis?

Tr. 57. To which the vocational expert responded:

> Yes. I mean, even though, you know, an employer probably isn't going to approach an employer more than frequently, because I really can't tell you when that one third of the day is going to be, then I would say that there would be no jobs because, you know, the time that the employer approaches them could be that one third of the time. And to be inappropriate with, especially with your supervisor, just wouldn't work for employers.

5

Tr. 57-58.

Plaintiff contends that the hypothetical's limitation of "occasional interaction" to only "coworkers and the general public," despite the RFC's broad limitation of "occasional interaction with *others*[,]" was harmful error because (i) co-workers, the general public, and supervisors are three distinct groups that must be addressed separately, and (ii) the vocational expert testimony in this case suggested that no jobs would exist in the national economy that Plaintiff could perform if Plaintiff was able to respond appropriately to supervisors only frequently, with occasional impairment.

Plaintiff's first contention is inapposite, but her second identifies a meaningful gap in the vocational expert's testimony that requires remand.  First, while it is true that "a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors[,]" the ALJ was not bound to posit the hypothetical to the vocational expert in a manner that precisely delineated between these three groups, as Plaintiff contends.  *See, e.g., Nickens v. Colvin*, 2014 WL 4792197, *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms.").  Moreover, as Plaintiff observes, the broad terminology the ALJ used suggests that the ALJ may have intended to convey in his hypothetical that Plaintiff could only occasionally interact with supervisors, as well as co-workers and the general public.  ECF No. 6-1 at 14; *see Smith v. Colvin*, No. 1:16-CV-00295 (MAT), 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) (finding no error where "close review of [the] record reveals that the ALJ understood that these social groups were distinct").

Still, the ALJ's omission of "supervisors" from his hypothetical may have "infect[ed] the hypothetical to the vocational expert" in a manner requiring remand.  *Nickens v. Colvin*, No. 14-

6

140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014).  Here, the relevant vocational expert testimony was offered in response to a question from Plaintiff's attorney.  *See* Tr. 57-58.  At the hearing, Plaintiff's counsel followed up on the ALJ's hypothetical and asked whether an individual who was "occasionally impaired"—which appears to be a misstatement of the ALJ's hypothetical because the ALJ limited Plaintiff's RFC to "occasional interaction"—and therefore able to only "frequently" respond appropriately to supervisors, could perform the jobs of router, marker, and office helper.  Tr. 57.  The vocational expert responded that a supervisor in the three identified jobs would probably not approach an employee on more than a frequent basis, but that "there would be no jobs" if an employee was not able to frequently respond appropriately to supervisors.  Tr. 57-58.  In light of the ALJ's prior omission of supervisors from the hypothetical, the vocational expert's testimony is ambiguous as to whether Plaintiff would be able to perform the identified jobs if Plaintiff could only "frequently" respond appropriately with supervisors.  Tr. 57.  Indeed, the vocational expert testified that a supervisor might approach an employee "one third of the time," indicating that the employee may have either "occasional" or "frequent" interaction with a supervisor in the three identified jobs.  *See* Program Operations Manual System DI 25001.001.A (defining "occasionally" as occurring "at least once up to one-third of an 8-hour workday" and "frequently" as occurring "one-third to two-thirds of an 8-hour workday").

This lack of clarity as to Plaintiff's ability to interact with, and respond appropriately to, supervisors indicates that the vocational expert's testimony with respect to the availability of jobs in the national economy Plaintiff could perform may have changed if the ALJ's hypothetical expressly accounted for Plaintiff's alleged limitation in interacting with supervisors.  *Nickens*, 2014 WL 4792197, at *2.  Indeed, the vocational expert testified, when asked to provide the "process or system" she used to provide the three identified jobs presented, that "first … I rely on

7

the Judge's hypotheticals" before "go[ing] through jobs that … will fit the hypothetical." Tr. 59. Accordingly, this matter should be remanded to allow the ALJ and vocational expert to expressly address whether this limitation was considered.

The ALJ's omission of "supervisors" from the hypothetical posed to the vocational expert is not harmless because it frustrates the Court's ability to perform meaningful review, and because it appears, from the vocational expert's testimony, that the outcome of this case may change with inclusion of additional social limitations. *See, e.g., Raymer v. Colvin*, 2015 WL 5032669, *6 (W.D.N.Y. Aug. 25, 2015); *Newsome v. Astrue*, 817 F. Supp. 2d 111, 134 (E.D.N.Y. 2011) ("Although applying the wrong legal standard might not require reversal if the error did not affect the outcome, that is not the situation here."). While, as discussed, an ALJ's hypothetical need only "accurately reflect the limitations and capabilities of the claimant involved[,]" the ALJ's omission of "supervisors" as a separate group from his hypothetical may have introduced some inaccuracy to the vocational expert. *Aubeuf*, 649 F. 2d at 114.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 6, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 8, is DENIED, and this matter is REMANDED to the SSA for further administrative proceedings consistent with this opinion. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 10, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York